## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KONE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:11-cv-00465-LPS-CJB |
| | ) |
| | )       JURY TRIAL |
| | )       DEMANDED |
| THYSSEN KRUPP USA, INC., | ) |
| THYSSEN KRUPP ELEVATOR AMERICAS | ) |
| CORPORATION, | ) |
| THYSSEN KRUPP ELEVATOR CORPORATION, | ) |
| THYSSEN KRUPP ELEVATOR CAPITAL | ) |
| CORPORATION, | ) |
| AND | ) |
| THYSSEN KRUPP ELEVATOR | ) |
| MANUFACTURING CORPORATION | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LIMITED, EXPEDITED DISCOVERY AND TO SHORTEN TIME FOR DEFENDANTS' DISCOVERY RESPONSES

OF COUNSEL

Michael K. Mutter
Quentin R. ("Rick") Corrie
Michael B. Marion
BIRCH, STEWART, KOLASCH & BIRCH, LLP
8110 Gatehouse Road, Suite 100 East
Falls Church, VA 22040-0747
(703) 205-8000
*kone-litigation@bskb.com*

Sean T. O'Kelly
O'KELLY & ERNST, LLC
The Brandywine Building
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 295-4905
(302) 295-2873 (facsimile)
sokelly@oelegal.com
*Attorneys for Plaintiff*
*Kone Corporation*

Dated: September 2, 2011

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................... 2

III.  ARGUMENT AND AUTHORITIES .............................................................. 5

      A.  The Federal Rules Entrust the Court With Discretion (1) to Grant
          Requests to Conduct Discovery at an Early Stage of Litigation Before
          the Parties Meet for Purposes of Formulating a Discovery Plan and (2) to
          Shorten a Defendant's Time to Respond to Discovery Requests ..................... 5

      B.  Under the Relevant Legal Standard Expedited Discovery Should
          Be Allowed ............................................................................................ 6

          1.   A Majority of Courts Apply a "Good Cause" or "Reasonableness"
               Standard .......................................................................................... 6
          2.   A Minority Of Courts Apply A "Preliminary Injunction" Standard ....... 10

IV.   CONCLUSION ............................................................................................. 13

ii

# TABLE OF CASES

*Adam Abou Ayyash v. Bank Al-Madina, et al.*,
233 F.R.D. 325 (S.D.N.Y. 2005.......................................................................................... 11

*Allcare Dental Mgmt, LLC v. Zrinyi*,
2008 U.S. Dist. Lexis 84015 (D. Idaho Oct. 20, 2008......................................................... 8

*Amari v. Spillan*,
2009 U.S. Dist. Lexis 105655 (S.D. Ohio Dec. 19, 2008).................................................... 8

*Arista Records LLC v. Does 1-18*,
2008 U.S. Dist. Lexis 3058 (E.D. Tenn. Jan. 15, 2008) ...................................................... 8

*Arista Records LLC v. Does*,
589 F. Supp. 2d 151 (D. Conn. 2008)................................................................................... 8

*Arista Records, L.L.C. v. Does*,
2008 U.S. Dist. Lexis 66377 (E.D. Missouri August 29, 2008) .......................................... 8

*BAE Systems Aircraft Controls v. Eclipse Aviation*,
224 F.R.D. 581 (D. Del. 2004) ............................................................................................ 8

*Better Packages, Inc. v. Zheng*,
2006 U.S. Dist. Lexis 30119 (D.N.J. May 17, 2006)........................................................... 8

*Caston v. Hoaglin*,
2009 U.S. Dist. Lexis 49591 (S.D. Ohio June 12, 2009)..................................................... 8

*Cayman Fund v. DotCom Entm't.*,
 2003 U.S. Dist. LEXIS 25083 (W.D.N.Y. December 5, 2003)........................................ 12

*Dimension Data N. Am., Inc. v. Netstar-1, Inc.*,
226 F.R.D. 528, 530 (E.D.N.C. 2005) ................................................................................. 8

*Educ. Comm'n For Foreign School Med. Grad. v. Maksim Repik, et al.*,
1999 U.S. Dist. LEXIS 7185, *7 (E.D. Pa. May 14, 1999) ................................................ 8

*Entm't Tech. Corp. v. Walt Disney Imagineering*,
2003 U.S. Dist. LEXIS 19832, No. Civ. A 03-3546,
2003 WL 22519440, at *2-4 (E.D. Pa. Oct. 2, 2003) ......................................................... 7

*Grooms v. Legge*,
2009 U.S. Dist. LEXIS 21456 (S.D. Cal. March 17, 2009)................................................. 8

*Keybank National Ass'n v. Quality Payroll Sys.*,
2006 U.S. Dist. LEXIS 42078 (E.D. N.Y. June 22, 2006) ............................................... 11

*Microsoft Corp. v. Mai*,
2009 U.S. Dist. Lexis 46105 (W.D. Wash. May 15, 2009) ............................................... 8

*Monsanto Co. v. Woods*,
250 F.R.D. 411, 413 (E.D. Mo. 2008) ....................................................................... 6, 7, 9

*Notaro v. Koch*,
95 F.R.D. 403 (S.D.N.Y. 1982) ............................................................................. 10, 11, 12

*OMG Fidelity, Inc. v. Sirius Technologies, Inc.*,
239 F.R.D. 300 (N.D.N.Y. 2006) ..................................................................................... 11

*Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*,
1998 U.S. Dist. LEXIS 10511, 1998 WL 404820 (E.D. Pa. 1998) .................................... 7

*Sheridan v. Oak St. Mortg.*,
244 F.R.D. 520 (E.D. Wisc. 2007).................................................................................... 8

*Sunflower Elec. Power Corp. v. Sebelius*,
2009 U.S. Dist. LEXIS 22775 (Kansas March 20, 2009)................................................... 8

*Wachovia Securities, LLC v. Stanton*,
571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008)................................................................. 7

*Warner Bros. Records, Inc. v. Does 1-6*,
527 F. Supp. 2d 1 (D.D.C. 2007)..................................................................................... 8

Pursuant to the Local Rules of this Court and Federal Rules of Civil Procedure 26(b)(2), 26(d)(1) and 26(f), as well as the federal discovery rules, Plaintiff Kone Corporation (hereinafter "Kone"), moves this Court to expedite limited discovery and shorten time for defendants' discovery responses prior to the preliminary injunction hearing and in support thereof refers the court to the memorandum of points filed herewith.

## I.    INTRODUCTION

Plaintiff Kone brought a patent infringement suit against Defendants, Thyssen Krupp USA, Inc., Thyssen Krupp Elevator Americas Corporation, Thyssen Krupp Elevator Corporation, Thyssen Krupp Elevator Capital Corporation, and Thyssen Krupp Elevator Manufacturing Corporation (hereinafter "TK") alleging infringement of U.S. Patent No. 6,685,002 ("the '002 patent"), entitled Method of Escalator Modernization The lawsuit seeks, in addition to damages, a preliminary and permanent injunction.  In general, the technology of the '002 patent entails modernization of an existing escalator installation through removal of all existing escalator hardware while retaining the existing truss structure. The '002 patent permits a more cost-effective solution over the alternative of completely removing the previous escalator installation, which requires demolition of the escalator and disruption of the building.[1]

Because of the need by Plaintiff Kone for certain evidence to adduce at the preliminary injunction hearing, which should be scheduled as a priority on the Court's docket, Plaintiff Kone files this motion to expedite some limited discovery and to shorten the time period for TK to respond. As explained below, the need for the discovery is

---

[1] These statements are not intended to interpret the '002 patent, but rather provide context for the present motion.

founded on TK's constant shifting of its manner of installation and non-infringement position.

Plaintiff Kone submits that "good cause" exists for granting expedited and shortened discovery for the limited purpose of the hearing on a preliminary injunction. Were Kone not now permitted to engage in discovery it would be unfairly prejudiced. Conversely, there is very little, if any, potential prejudice to TK if expedited and shortened discovery is permitted.

Kone seeks the following relief through this motion:

- Service of not more than 10 interrogatories, not more than 10 discovery requests, and not more than 2 deposition (one of which is a 30(b)(6) deposition);

- Shorting the time for responding to the discovery requests to 14 days;

- Setting deadlines for the above-requested discovery, including a date certain for any motions to compel and completion; and

- Setting a date certain by which the parties will agree to a protective order or submit briefing to the Court to resolve disputes on a protective order.

## II.    FACTUAL BACKGROUND

In conjunction with Kone filing their Amended Complaint on June 20, 2011 (D.I. 6), Kone moved for a preliminary injunction against TK to enjoin their infringement of the '002 Patent during pendency of the present action. To date, Kone has submitted two briefs in support of the preliminary injunction motion (Opening Brief [D.I. 8] and Reply Brief [D.I. 33]) and TK has submitted two briefs in opposition to the motion (Answering

Brief [D.I. 25] and Surreply Brief [D.I. 39]). Per agreement of the parties, Kone will be seeking to submit one additional brief on the motion.[2]

The accused product of the present action is TK's I.MOD escalator modernization system. (D.I. 8, p. 6.) There is presently little publicly available information concerning the design and method of installation of the I.MOD, as TK has sold only one I.MOD, and it will not be installed until this fall. (D.I. 25, p. 10.) The primary factual support for Kone's infringement position relied on two TK materials detailing TK's accused I.MOD product: a PowerPoint presentation distributed to customers of TK ("the PowerPoint") (D.I. 8, Marion Dec., Ex. G), and a video animation posted on Thyssen Krupp Elevator Americas' Facebook page ("the Video") (D.I. 8, Marion Dec., Ex. H).

Claim 1 of the '002 Patent is a method claim that recites five steps for modernizing an escalator. (*See* D.I. 8, pp. 9-10.) Using the Video and the PowerPoint, Kone established its *prima facie* case of infringement in its Opening Brief (D.I. 8, pp. 9-10, App. A.).   In responding to the preliminary injunction motion, TK has only challenged infringement on one of these five steps of claim 1, and in particular, that a horizontal portion of an I.MOD incline module is not attached or connected to a cross member of the existing escalator truss. (*See* D.I. 25, p. 17.)

In responding to the preliminary injunction motion, TK did not challenge the veracity of the PowerPoint or the Video, but rather attempted to "explain away" the infringement. TK stated that they had two "versions" of their I.MOD product. (D.I. 25, p. 8.)

---

[2] In view of the present motion, Kone seeks to defer filing its final brief until after conclusion of the expedited discovery.

TK's position was that the "first version" of their I.MOD product, as shown in the PowerPoint presentation, could not infringe the '002 Patent because the existing cross member had been removed. (*Id.*) Without the truss member, the horizontal portion of the incline module could not attach or connect to the truss member. (*Id.* at p. 18.) This position was contradicted by the established factual record, as the PowerPoint clearly showed the existing cross member retained in installation of the "first version" incline module. (D.I. 33 at p. 3.) With their previous position in shambles, TK conceded in their Surreply Brief that the "first version" incline modules could be used where the existing truss member is retaining, but "is not intended to be the usual application." (D.I. 39 at p. 3.) Again, TK maintains their non-infringement position, but provides no contravening documentary evidence in support of their position. (*Id.*)

TK's Answering Brief also debuted a "second version" of their I.MOD product. (D.I. 25, pp. 9-10.) Essentially, TK's non-infringement position for the "second version" was similar to their non-infringement for their "first version," whereby the "second version" incline modules lacked a horizontal portion. (*Id.* at pp.10, 18-19.) Through careful study of the "second version" incline modules and application of basic engineering principles, Kone determined that TK had not disclosed to the Court the use of a temporary horizontal portion of the incline module for installation of the incline modules. (D.I. 33, p. 4.) This was evidenced by three sets of hole pairs located on the vertical portions of incline modules, corresponding to three connection points illustrated in the "first version" incline modules. (*Id.* at p.5.) TK confirmed the existence of the "second version" horizontal portion in their Surreply brief. (D.I. 39, p.6.) Much like their "first version" non-infringement position, TK has again shifted its non-infringement

position, stating, *inter alia*, the horizontal portion does not connect or attach to the existing truss. (*Id.* at 10.)

To date, TK has been less than forthright with responding to the allegations of infringement. Instead of providing the Court with schematics, manuals, blueprints, etc. detailing how their I.MOD product actually is assembled and installed, TK has chosen to show the I.MOD only through tunnel vision in the form of small, undetailed drawings (the source of which is not disclosed) and two declarations with contradicting statements. (For example, Glanzmann's first declaration states the cross members are removed [D.I. 25, A. 166, ¶ 6] while Glanzmann's supplemental declaration states the cross members should be retained [D.I. 39, Glanzmann's Suppl. Dec. ¶ 4].)  TK attempts to move the goalposts on Kone and the Court. As this cycle of shifting positions could conceivably go on indefinitely, limited expedited discovery should be conducted on the TK I.MOD product. In the interests of promoting judicial economy and affording Kone with the opportunity to seek its entitled relief, the Court must grant the discovery.

### III.   ARGUMENT AND AUTHORITIES

A.   <u>The Federal Rules Entrust the Court With Discretion (1) to Grant Requests to Conduct Discovery at an Early Stage of Litigation Before the Parties Meet for Purposes of Formulating a Discovery Plan and (2) to Shorten a Defendant's Time to Respond to Discovery Requests</u>

Under Rule 26(d) a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f).  Fed. R. Civ. P. 26(d).  However, Rule 26(d)(1) provides as one of its exemptions that the court has the authority to order discovery prior to that date.  That is consistent with the court's broad discretion to alter the timing, sequence and volume of discovery.  Fed. R. Civ. P. 26(b)(2),

5

As to shortening the time for discovery responses, the federal rules authorize, among other things, the court to shorten the time for responses to Interrogatories and for responses to a Request for Production of Documents. *See, e.g.*, Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A).

      B.     <u>Under the Relevant Legal Standard Expedited Discovery Should Be Allowed</u>

          1.     *A Majority of Courts Apply a "Good Cause" or "Reasonableness" Standard*

As stated in *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008):

> Courts use one of two standards to determine whether a party is entitled to conduct expedited discovery. Some courts apply a "good cause" or "reasonableness" standard while others analyze a set of factors similar to those for obtaining a preliminary injunction. *See Special Situations Cayman Fund, L.P. v. Dot.com Entm't Group, Inc.*, 2003 WL 23350128 at *1, n.7 (W.D. N.Y. 2003) (slip op.) The Court of Appeals for the Eighth Circuit has not adopted either standard.

The *Monsanto* court found that the "good cause" standard was the appropriate standard to follow and explained:

> Under the good cause standard, the party requesting expedited discovery must show that the need for expedited discovery, in consideration of administration of justice, outweighs prejudice to responding party. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002); *Qwest Comm. Int'l., Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001). *Cf. Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) ("[W]here a plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it makes sense to examine the discovery request . . . on the entirety of the record to date and the reasonableness of the request in light of all surrounding circumstances." and noting that *Notaro* involved a requested permanent injunction).

*Monsanto*, 250 F.R.D. at 413.

Courts applying a "good cause" standard have only denied expedited discovery where a preliminary injunction was not sought and the complaint had not been served, *see Quest*, 213 F.R.D. at 419-420; or where movant's discovery requests were overly broad and not reasonably tailored to the specific issues to be addressed at the preliminary injunction hearing. *Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, 1998 U.S. Dist. LEXIS 10511, 1998 WL 404820 (E.D. Pa. 1998).

Courts have applied the "good cause" standard of *Monsanto* by balancing the need for expedited discovery, in the administration of justice, against the prejudice to the responding party, and considering the entirety of the record to date and the reasonableness of the request in light of the surrounding circumstances. *Wachovia Securities, LLC v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008).

In *Wachovia* the Court granted the request for the expedited discovery in aid of preliminary injunction proceedings—similar to the posture and requests made in the present proceedings. Finding that expedited discovery may clarify matters outside of plaintiff's knowledge and that the defendant would not be prejudiced by permitting properly limited and focused discovery for the preliminary injunction hearing, the court permitted the propounding of fifteen interrogatories, the noticing and conducting of not more than five depositions and allowed reasonable and narrowly focused requests for production of documents with a response time of fourteen days. 571 F. Supp. 2d at 1050.

Courts in Pennsylvania have adopted a "good cause" standard. *See, e.g., Entm't Tech. Corp. v. Walt Disney Imagineering*, 2003 U.S. Dist. LEXIS 19832, No. Civ. A 03-3546, 2003 WL 22519440, at *2-4 (E.D. Pa. Oct. 2, 2003) (expedited discovery denied

7

where, among other things, no preliminary injunction hearing was requested and if expedited discovery granted, it would amount to specific performance of part of a contested contract); *Educ. Comm'n For Foreign School Med. Grad. v. Maksim Repik, et al.*, 1999 U.S. Dist. LEXIS 7185, *7 (E.D. Pa. May 14, 1999) ("Expedited discovery in connection with a preliminary injunction motion is appropriate.").

Courts in many other states have, similarly, adopted the "good cause" standard. *See, e.g.*, *Caston v. Hoaglin*, 2009 U.S. Dist. Lexis 49591 (S.D. Ohio June 12, 2009); *Microsoft Corp. v. Mai*, 2009 U.S. Dist. Lexis 46105 (W.D. Wash. May 15, 2009); *Grooms v. Legge*, 2009 U.S. Dist. LEXIS 21456 (S.D. Cal. March 17, 2009); *Sunflower Elec. Power Corp. v. Sebelius*, 2009 U.S. Dist. LEXIS 22775 (D. Kansas March 20, 2009); *Amari v. Spillan*, 2009 U.S. Dist. Lexis 105655 (S.D. Ohio Dec. 19, 2008); *Arista Records LLC v. Does*, 589 F. Supp. 2d 151 (D. Conn. 2008); *Allcare Dental Mgmt, LLC v. Zrinyi*, 2008 U.S. Dist. Lexis 84015 (D. Idaho Oct. 20, 2008; *Arista Records, L.L.C. v. Does*, 2008 U.S. Dist. Lexis 66377 (E.D. Missouri August 29, 2008); *Arista Records LLC v. Does 1-18*, 2008 U.S. Dist. Lexis 3058 (E.D. Tenn. Jan. 15, 2008); *Warner Bros. Records, Inc. v. Does 1-6*, 527 F. Supp. 2d 1 (D.D.C. 2007); *Better Packages, Inc. v. Zheng,* 2006 U.S. Dist. Lexis 30119 (D.N.J. May 17, 2006); *Sheridan v. Oak St. Mortg*., 244 F.R.D. 520 (E.D. Wisc. 2007); *Dimension Data N. Am., Inc. v. Netstar-1, Inc*., 226 F.R.D. 528, 530 (E.D.N.C. 2005).  Delaware has not definitively adopted either standard to be applied to a request for expedited discovery.  *BAE Systems Aircraft Controls v. Eclipse Aviation*, 224 F.R.D. 581 (D. Del. 2004).  As the majority of courts that have considered the issue of expedited discovery have adopted the "good cause" standard, Kone urges the Court to adopt the "good cause" standard as well.

8

Applying the "good cause" standard of *Monsanto* to the present case, Kone more than demonstrates the requisite good cause for expedited discovery. Here, as in *Wachovia*, Kone needs information not currently in its possession in anticipation of evidence it intends and needs to produce at a preliminary injunction hearing. As stated above, the information is not publicly available, especially considering, based on the establish record, there has not yet been an installation of the I.MOD. (D.I. 25, p. 10.) The I.MOD is not a product publicly available that can be analyzed and studied by Kone. Moreover, TK considers the key technical information to be highly proprietary trade information,[3] inasmuch TK is in full control of the information that the public (and therefore Kone) is allowed to see. Accordingly, it is highly prejudicial to Kone to proceed with the preliminary injunction motion viewing the accused product through the pinhole of TK's construction.

Moreover, TK is preparing to install its first I.MOD system "this fall," (D.I. 25, p. 10) which would provide TK with its first foothold in escalator modernization. When Kone moved for a preliminary injunction, there was sufficient time for full briefing on the preliminary injunction prior to this installation. However, between TK's delays (*see* D.I. 11, requesting three-week extension of time to respond to preliminary injunction motion), and TK introducing new facts just last week (D.I. 39, motion for surreply including a supplemental declaration), Kone is now facing the possibility of not being able to enjoin this first installation. This harm is in addition to the harms addressed in its Opening Brief, which includes loss of goodwill and reputational harm, irreversible price erosion, and loss of service contracts.  (D.I. 8, pp. 11-15.) These harms will only

---

[3] TK required Kone to sign a Non-Disclosure Agreement before TK would agree to share technical information on the I.MOD during settlement discussions.

9

exacerbate if TK is able to demonstrate a successful installation of the I.MOD to its future customers.

Conversely, there is no prejudice to TK by allowing limited discovery in the nature of ten Interrogatories, ten Requests for Production of Documents and at most two depositions. The discovery sought by Kone is information that would be subject to discovery anyway. TK cannot say it would be prejudiced by requiring disclosure of this information in September instead of a few months later. The points of contention concerning infringement by the I.MOD system have been well fleshed-out by the parties, and the discovery will be directed to the incline modules. As stated above, claim 1 of the '002 Patent contains five steps—Kone will only be seeking expedited discovery on information concerning just one of these five steps. This limited discovery is reasonable and supports a lack of hardship on TK for responding to it.

Lastly, the need for the requested discovery was prompted by TK's own actions. All doubts and ambiguities about the I.MOD product have been raised by TK, and in particular the manner of revealing as little information as possible in its briefs. TK can hardly object now to an issue they caused.

In view of Kone's need for the discovery, the lack of hardship faced by TK for responding to discovery, and the reasonableness of the discovery requests, Kone meets the "good cause" standard warranting expedited discovery.

### 2.     *A Minority Of Courts Apply A "Preliminary Injunction" Standard*

Other courts, notably in New York, employ a multi-part test set forth in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), which requires a plaintiff seeking expedited discover to show:

10

(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted.

*Id*. at 405.

As noted in *Notaro,* the four factors set forth above "parallel those showings necessary to obtain a preliminary injunction." *Id.* at 405 n.4. *Notaro* was decided prior to the significant discovery changes to the federal rules in 2000 and under the unusual circumstance of a plaintiff seeking to depose the then New York City Mayor within thirty days following commencement of the suit. Fed. R. Civ. P. 26 advisory committee notes; *Notaro*, 95 F.R.D. at 404-405.

*Notaro* has not been followed generally by the federal courts of other states and has not even been followed by all other federal courts in New York. *See Adam Abou Ayyash v. Bank Al-Madina, et al*., 233 F.R.D. 325 (S.D.N.Y. 2005 (rejecting *Notaro* and granting expedited discovery by finding that "good cause" exists on the entirety of the record to date). Courts applying *Notaro* have generally allowed expedited discovery where discovery sought is limited and other factors generally met. *See OMG Fidelity, Inc. v. Sirius Technologies, Inc*., 239 F.R.D. 300 (N.D.N.Y. 2006) (court applied *Notaro* and granted expedited discovery in nature of sets of five interrogatories, five document discovery requests and two 30(b)(6) depositions, where defendants' attorneys were fully conversant with plaintiff's claims and defendant's potential defenses to them); *Keybank National Ass'n v. Quality Payroll Sys.*, 2006 U.S. Dist. LEXIS 42078 (E.D. N.Y. June 22, 2006) (under either "reasonable standard" test or *Notaro* factors test expedited discovery granted where plaintiff faced possibility of irreparable harm); *Cayman Fund v. DotCom*

11

*Entm't.,* 2003 U.S. Dist. LEXIS 25083 (W.D.N.Y. December 5, 2003) (expedited discovery denied where failure to demonstrate any irreparable harm because plaintiff failed to exhaust its legal remedies).

If the Court were to adopt the *Notaro* test, Kone's need for expedited discovery also meets the *Notaro* factors. Kone's Opening Brief identifies support for factors (1) and (2) of the *Notaro* test.  In general, Kone has established that it meets the *Notaro* test through its motion for a preliminary injunction and its briefing in support of the motion. To summarize succinctly, Kone faces ongoing irreparable harms of loss of goodwill and reputational harm, irreversible price erosion, and loss of service contracts.  (D.I. 8, pp. 11-15.) Kone's Opening Brief (D.I. 8, pp. 7-11, App. A) and Reply Brief (D.I. 33, pp. 2-12) demonstrated that the I.MOD product infringes at least one valid claim of the '002 Patent, thereby showing likelihood of success on the merits. TK's Surreply Brief introduced new, privately-held information to cast doubt on TK's infringement, (D.I. 39, pp. 2-7.) and discovery should be permitted to allow rebuttal and refutation of TK's new evidence.

Factor (3), concerning a connection between the requested discovery avoidance of the injury, is met because expedited discovery, proving TK's infringement, will warrant grant of the preliminary injunction, thereby mitigating Kone's injuries. Granting of the preliminary injunction will result in a lessening of price erosion and a reduction in the loss of good will and reputation and harm, as well as a reduction in the loss of market share and the loss of service contracts.  Details are set forth in the Opening Brief.  In addition, TK is preparing to install its first I.MOD, as mentioned above. These harms will

only exacerbate if TK is able to demonstrate a successful installation of the I.MOD to its future customers.

Finally, factor (4), concerning a balance of the injuries faced between the parties, is met because the injury that will result without expedited discovery will be greater than any injury TK will suffer if the expedited relief is granted. Kone's irreparable injuries will continue unabated should the requested discovery be denied, while TK suffers no injury having to produce discovery on matters TK will be required to disclose anyway in present action.

Accordingly, Kone meets all four of the *Notaro* factors, should the Court adopt this more stringent standard for expedited discovery, thereby warranting the Court granting limited, expedited discovery from TK.

## IV. CONCLUSION

Under either standard, Kone demonstrates that it meets the test for granting expedited and shortened discovery for the hearing on the preliminary injunction. Thus, Kone's Motion should be granted.

Respectfully submitted,

O'KELLY & ERNST, LLC


*/s/ Sean T. O'Kelly*
Sean T. O'Kelly (No. 4349)
O'KELLY & ERNST, LLC
The Brandywine Building
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 295-4905
(302) 295-2873 (facsimile)
sokelly@oelegal.com

13

– AND –

Michael K. Mutter
Quentin R. ("Rick") Corrie
Michael B. Marion
BIRCH, STEWART, KOLASCH &
BIRCH, LLP
8110 Gatehouse Road, Suite 100 East
P.O. Box 747
Falls Church, VA 22040-0747
(703) 205-8000
(703) 205-8050 (facsimile)
*mkm@bskb.com*
*qrc@bskb.com*
*mbm@bskb.com*
*mailroom@bskb.com*

**ATTORNEYS FOR PLAINTIFF
KONE CORPORATION**

14