## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KONE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 11-465-LPS-CJB |
| | ) | |
| THYSSENKRUPP USA, INC., | ) | |
| THYSSENKRUPP ELEVATOR AMERICAS | ) | |
| CORPORATION, | ) | |
| THYSSENKRUPP ELEVATOR, | ) | |
| CORPORATION, | ) | |
| THYSSENKRUPP ELEVATOR CAPITAL | ) | |
| CORPORATION, AND | ) | |
| THYSSENKRUPP ELEVATOR | ) | |
| MANUFACTURING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM ORDER

On September 2, 2011, Plaintiff Kone Corporation moved for leave to take expedited

discovery in connection with its pending motion for a preliminary injunction. At a

teleconference held on September 13, 2011, this Court ordered the parties to meet and confer

regarding the scope and timing of Plaintiff's expedited discovery requests. The parties were

unable to reach agreement on this issue. Pursuant to the Court's Order regarding Resolution of

Discovery Matters, the parties submitted letter briefs outlining their respective positions, and

presented oral argument at a teleconference on September 23, 2011. Having considered all of the

parties' written submissions and oral arguments, and for the reasons that follow, this Court

GRANTS-IN-PART Plaintiff's motion, with the scope and timing of expedited discovery to be

limited as outlined below.

## I.    BACKGROUND

### A.    Procedural Posture

Plaintiff brought the present action on May 25, 2011, alleging infringement of U.S. Patent No. 6,685,002 ("the '002 patent"). (D.I. 1)  On June 20, 2011, Plaintiff filed an amended complaint, again asserting infringement of the '002 patent, and adding a count of false advertising under the Lanham Act. (D.I. 6)  On that same date, Plaintiff moved for a preliminary injunction ("Plaintiff's P.I. motion") barring Defendants from "infringing [the '002 patent] during the pendency of the present litigation." (D.I. 7 at 1)  Although Plaintiff's P.I. motion was fully briefed on August 11, 2011 (D.I. 8, 25, 33), the parties later jointly agreed that Defendants could submit a sur-reply brief regarding that motion (D.I. 39), and that Plaintiff could later submit an additional responsive brief (which has not yet been filed). (D.I. 38)  Although Defendants have each answered Plaintiff's Amended Complaint (D.I. 27–31), the parties have yet to meet and confer pursuant to Fed. R. Civ. P. 26(f).[1]

### B.    The Parties' Arguments & Evidence Regarding Infringement

Plaintiff is an international engineering and service company specializing in the manufacturing, service, and modernization of elevators and escalators. (D.I. 6 at ¶ 19)  Plaintiff is the sole owner by assignment of the '002 patent, which is directed to methods of escalator modernization, as well as to modernized escalator systems and kits associated therewith. The '002 patent teaches that an escalator can be modernized by retaining the truss framework from an

---

[1]      The Court has not yet scheduled a Rule 16 conference and no scheduling order has been entered. On August 31, 2011, Defendants proposed that the parties conduct a Rule 26(f) conference. (D.I. 44, ex. 1 at ¶ 5) Plaintiff apparently rejected this suggestion. *Id.*

existing escalator,[2] and then installing three types of modules–an upper module, a lower module, and a "plurality of incline modules" along the diagonal length of the existing truss structure. ('002 patent, col. 5:42)  Each of the claims of the '002 patent includes a limitation requiring that a horizontal portion or element of those incline modules be attached or connected to a cross member of the retained truss framework.[3]  The parties' briefs and other submissions in connection with Plaintiff's P.I. motion focus largely on whether the accused product satisfies this limitation.

Plaintiff alleges that Defendants' I.MOD Escalator Modernization System infringes the '002 patent.[4]  The first U.S. I.MOD product was sold to Phoenix Sky Harbor Airport in 2011, but has not yet been installed.  (D.I. 25 at 10)  Relying largely on declarations from their employees, Defendants assert that there are two versions of the incline module that might be used in an I.MOD system.  The first version includes an H-shaped support member that Defendants claim is "intended to be used where a cross member has been completely removed from the existing truss structure."  (*Id.* at 8)  The second version includes a set of two vertical members that are attached to the sides of the escalator truss structure, but that have no permanent horizontal feature that

---

[2]        The "truss" of an escalator is its structural framework, which is usually constructed of metal, and which extends the entire length of the escalator.  ('002 patent, col. 2:43–58; FIG. 1)  A "cross member" is a metal bar that extends across from one side of an escalator to another, linking the two sides of the truss.  (*Id.* at col. 2:59–3:3)

[3]        For instance, claim 1 of the '002 patent recites a step of installing a plurality of incline modules by "placing each incline module just inside [the] truss framework and attaching a horizontal portion of each incline module to one of [the] cross members."  ('002 patent, col. 5:42–47)

[4]        As noted above, the '002 patent is directly principally to *methods* of modernizing an escalator system, so the process of installing an I.MOD system is also accused of infringement.

connects the two vertical members to each other. (*Id.* at 9)  Defendants argue that neither version

of their I.MOD system includes a step of "attaching" or "connecting" a horizontal portion of an

incline module to an existing truss cross member, as required by the '002 patent. (*Id.* at 1)

For its part, Plaintiff appears to have been unaware, prior to the filing of its Amended

Complaint, that two versions of the I.MOD system apparently exist.  In its filings regarding the

P.I. motion, Plaintiff has thus far relied primarily on two items as evidence of the alleged

infringement: (i) a video presentation about the I.MOD system on Defendant ThyssenKrupp

Elevator Americas' Facebook page; and (ii) an undated, untitled, eight-page ThyssenKrupp

PowerPoint presentation describing a modular escalator modernization system.  (D.I. 8, exs. G &

H)  At various points in its filings, Plaintiff argues that these two sources demonstrate that

Defendants' I.MOD system is installed so that its incline modules are attached or connected to a

cross member of the retained truss framework.  For their part, Defendants dispute Plaintiff's

assertions and argue that Plaintiff's allegations amount to unfounded speculation, based on a

misunderstanding of how the I.MOD system is actually installed.

### C.    Plaintiff's Motion for Expedited Discovery

On September 2, 2011, roughly ten weeks after first moving for a preliminary injunction,

Plaintiff filed a motion seeking, *inter alia*, (1) leave to serve Defendants with not more than 10

interrogatories and not more than 10 document requests; (2) a shortened, 14-day deadline for

Defendants to respond to those requests; and (3) leave to take not more than 2 depositions.  (D.I.

42)  Although Plaintiff specified these three different discovery mechanisms in its motion, and

stated that the discovery sought would be generally limited to a single, disputed step relating to

the installation of incline modules (D.I. 43 at 10), Plaintiff did not provide any actual discovery

4

requests to this Court, and failed to identify the individual witness(es) it sought to depose. Plaintiff asserted that "the need for discovery is founded on [Defendants'] constant shifting of its manner of installation and non-infringement position," and that discovery was needed in order to adduce evidence that would be important to the issues addressed at the preliminary injunction hearing. (D.I. 43 at 1–2, 9)  On September 8, 2011, Defendants submitted a brief in opposition to Plaintiff's request, disputing Plaintiff's characterization of its position as "shifting," arguing Plaintiff failed to justify the need for expedited discovery, and requesting that any discovery be limited to ascertaining the methods of constructing and installing Defendants' accused I.MOD product. (D.I. 44)

At a teleconference on September 13, 2011, this Court noted that it was impossible for either Defendants or for the Court to assess Plaintiff's request for expedited discovery without knowing the scope of the actual discovery sought. (D.I. 46)  As a result, Plaintiff was ordered to serve its proposed expedited discovery requests on Defendants by no later than September 14, 2011, and the parties were ordered to meet and confer by September 16, 2011, in an attempt to reach agreement on the scope and timing of any pre-hearing discovery.

Having failed to reach agreement, the parties submitted letter briefs and exhibits to the Court regarding their respective positions. (D.I. 48, 49)  Included among these submissions were Plaintiff's proposed requests for production, interrogatories, and a 30(b)(6) deposition notice. The parties discussed these submissions at a teleconference held on September 23, 2011.

## II.    STANDARD OF REVIEW

Generally, "[a] party may not seek discovery from any source before the parties have

conferred as required by Rule 26(f)."[5]  Fed. R. Civ. P. 26(d)(1).  However, courts have broad

discretion to manage the discovery process, and can accelerate or otherwise alter the timing and

sequence of discovery.  *See id.*; *see also* Fed. R. Civ. P. 26(d) advisory committee notes (1993)

("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation.  This will be

appropriate in some cases, such as those involving requests for a preliminary injunction . . . .")

Federal courts are also specifically authorized, if circumstances warrant, to shorten the time for

responses to interrogatories and requests for production of documents, and to permit early

depositions.  Fed. R. Civ. P. 30(a)(2)(A)(iii); 33(b)(2); & 34(b)(2)(A).

The Federal Rules of Civil Procedure offer little guidance as to when it is appropriate to

authorize expedited and/or early discovery.  The Third Circuit does not appear to have adopted a

standard for evaluating such requests, and district courts in this circuit have applied two different

standards when considering motions for expedited discovery.  The first standard, which was

initially articulated by the U.S. District Court for the Southern District of New York, analyzes an

expedited discovery request using factors similar to those used in reviewing a request for

injunctive relief or specific performance.  *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982);

*Gucci Am., Inc. v. Daffy's Inc.*, No. Civ.A. 00–4463, 2000 WL 1720738, at *5–6 (D.N.J. Nov.

14, 2000) (applying the *Notaro* standard).  Under the *Notaro* standard, the moving party must

demonstrate:

> (1) irreparable injury, (2) some probability of success on the merits,
> (3) some connection between the expedited discovery and the

---

[5]      Rule 26(f) of the Federal Rules of Civil Procedure provides that "the parties must
confer as soon as practicable—and in any event at least 21 days before a scheduling conference is
to be held or a scheduling order is due under Rule 16(b)."  Fed. R. Civ. P. 26(f)(1).  Parties need
not await the scheduling of a Rule 16 conference before holding a Rule 26(f) conference.

> avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Notaro*, 95 F.R.D. at 405.

The second, less stringent standard requires the party seeking discovery to show "good cause" for its motion, such that the request is "reasonable" in light of the relevant circumstances. *See, e.g.*, *Better Packages, Inc. v. Zheng*, No. Civ.A 05-4477(SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006). Under this "reasonableness" standard, the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent. *See id.* (internal citations omitted). "An increasing majority of district courts" have rejected the rigid *Notaro* standard and adopted the more flexible "good cause"/reasonableness analysis when considering expedited discovery requests. *St. Louis Group, Inc. v. Metals & Additives Corp.*, Civil Action No. L–11–22, 2011 WL 1833460, at *2 (S.D. Tex. Apr. 26, 2011).

## III.   DISCUSSION

### A.   Applicable Standard of Review

Given the absence of clear guidance from either the Federal Rules of Civil Procedure or from the Third Circuit, this Court must first determine whether to apply the *Notaro* standard or the reasonableness standard to Plaintiff's request.

Although, as noted above, at least one district court in the Third Circuit has applied the

*Notaro* standard to an expedited discovery motion, the District of Delaware appears never to have utilized that standard. For instance, in *BAE Sys. Aircraft Controls Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587–88 (D. Del. 2004) (hereinafter "*BAE*"), the plaintiff sought leave to take five depositions and to compel production of eleven documents on an expedited basis. While in *BAE*, the Court acknowledged and discussed both the *Notaro* and reasonableness standards, it ultimately determined that there was "no need to select the appropriate standard to be applied to a request for expedited discovery" because the Court concluded that the case should be stayed pending arbitration. *Id.* *BAE* therefore left unresolved the issue of what standard generally applies to expedited discovery motions.

There appears to be only one other written decision from this District that touches on the appropriate standard to apply when considering a motion for expedited discovery. In *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. Civ.A. 03–484–KAJ, 2004 WL 406351 (D. Del. Mar. 3, 2004) (hereinafter "*Dell*"), a patent infringement case, the plaintiff filed a motion for limited, expedited discovery before filing its reply brief in support of a motion for a preliminary injunction. *Id.* at *1. The *Dell* plaintiff argued that the defendant failed to provide certain information relating to disputed claim constructions, and therefore sought expedited treatment of three interrogatories and eight document requests. *Id.* In granting the motion, the Court noted that the requests appeared to be appropriately tailored to the issues relating to the pending motion, and that the plaintiff "ha[d] shown *good cause* exists to allow the discovery." *Id.* (emphasis added) (citing *Philadelphia Newspapers v. Gannett Satellite Info. Network, Inc.*, No. CIV. A. 98–CV–2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998)). Although the *Dell* Court thus appears to have employed the reasonableness standard, it did so

8

without a discussion of the competing *Notaro* standard.

This Court is convinced that it should follow the lead of the *Dell* Court and the majority

of other jurisdictions, and apply the reasonableness standard to Plaintiff's motion for expedited

discovery. In so doing, the Court notes that *Notaro* and *Gucci*, which applied a standard different

from that which the Court adopts today, involved unique sets of facts that are inapplicable to the

present application for discovery. *See generally OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239

F.R.D. 300, 303–04 (N.D.N.Y. 2006) (stating that although *Notaro* was a "succinct, well-

reasoned decision," it addressed a "very specific situation" that preceded the sweeping changes to

the Federal Rules of Civil Procedure enacted in 2000).

In *Notaro*, the plaintiffs alleged that Edward Koch, who was at that time the mayor of

New York City, violated their constitutional rights of freedom of speech and expression, and

sought leave to depose Mayor Koch within thirty days of the commencement of the action. 95

F.R.D. at 404. The plaintiffs alleged, based on newspaper reports, that Mayor Koch, who was

running for Governor of New York, had compiled lists of members of the Liberal Party

employed by the State of New York, and intended to fire them if elected governor. *Id.* The

Southern District of New York found that a preliminary-injunction-style analysis of this request

was necessary because of the extraordinarily quick timing of the request, which presented the

possibility that the defendant might "unwarily incriminat[e] [himself] before [he had] a chance to

review the facts of the case and to retain counsel." *Id.* at 405. The *Notaro* Court's decision was

also affected by the atypical purpose behind the deposition, which it found would be tantamount

to an "inquisition of counsel for an opposition political party without sufficient advance notice,

[where] the possibility of an incidental embarrassment is great." *Id.* at 406.

9

Although the *Gucci* Court did not face the delicate set of political factors at issue in *Notaro*, the facts in *Gucci* were similarly unique.  In *Gucci*, the Court was clearly concerned that the request for discovery was the product of a type of sham litigation, designed not to shine light on the merits of the allegations contained in the complaint, but instead to permit the plaintiffs to learn the identity of third-party distributors who were selling certain handbags.  2000 WL 1720738, at *6–7.  Ultimately, after employing the *Notaro* test, the *Gucci* Court denied the plaintiff's motion for expedited discovery.  *Id.* at *11.

Unlike the unique circumstances in *Notaro* and *Gucci*, here Plaintiff is seeking discovery that directly relates to products and methods accused of patent infringement, in a suit between sophisticated corporate parties, more than three months after the filing of the Amended Complaint, and after all Defendants had the opportunity to answer that Complaint.  Thus, in contrast to the situation in *Notaro*, here Defendants have had ample time to fully review the allegations against them before addressing the discovery request.  *See, e.g., Zheng*, 2006 WL 1373055 at *4 (noting that where defendants had ample time to review the facts of the complaint and sufficient information about plaintiff's allegations, the *Notaro* standard was not warranted).  And, at least on the facts currently before it, this Court discerns no ulterior motive to this litigation analogous to the special circumstances encountered in *Notaro* or *Gucci*, and which might justify heightened scrutiny.  *See, e.g., Entm't Tech. Corp. v. Walt Disney Imagineering*, No. Civ.A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (noting that the lack of "*Gucci*-like circumstances indicat[ing] that Plaintiff . . . is using the litigation as a shell game"

weighed against using the *Notaro* standard).[6]

Moreover, Plaintiff's request also arises in the context of a pending preliminary injunction motion.[7]  In order to carry its burden on the P.I. motion, Plaintiff must demonstrate, *inter alia*, that it will "likely prove" that Defendants infringe the '002 patent.[8]  Under a *Notaro*-style analysis, a movant would have to paradoxically demonstrate a "probability of success" on the merits of infringement to justify discovery—discovery that is presumably needed in order to help make a showing of the same type of "likelihood of success" at a later preliminary injunction hearing.  For this reason, a number of courts have recognized that the *Notaro* analysis is circular and ineffective when the request relates to an underlying preliminary injunction motion.  *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (applying a reasonableness standard and noting that when "a plaintiff seeks expedited discovery in order to prepare for a preliminary injunction hearing, it does not make sense to use preliminary injunction analysis factors to determine the propriety" of the request); *see also Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002) (noting that it makes "little sense" to employ the *Notaro* analysis when the request is for the purpose of

---

[6]     In any event, the concerns raised in *Notaro* and *Gucci*—such as the timing, scope, and potential for abuse relating to the discovery requests—can be subsumed within the overall analysis of whether Plaintiff has shown good cause for its requests.

[7]     No preliminary injunction motion was pending in *Notaro* or *Gucci*.

[8]     Courts consider four factors when determining whether to grant a preliminary injunction motion: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in [the movant's] favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

preparing for a preliminary injunction hearing).[9]

Accordingly, the Court will consider whether Plaintiff's expedited discovery motion satisfies the "reasonableness" test.

### B.    Assessment of Requests Under "Good Cause"/Reasonableness Standard

As discussed above, the reasonableness standard requires the court to assess "the actual circumstances of [this] case, as well as [to consider] certain factors such as a pending preliminary injunction hearing, the need for discovery, and the breadth of the moving party's discovery requests." *BAE*, 224 F.R.D. at 587.  After considering these factors, the Court finds that expedited discovery should proceed, albeit on a much more limited basis than Plaintiff has requested.

The circumstances of this case, including its procedural posture, weigh in favor of granting expedited discovery, particularly insofar as that discovery directly relates to disputed facts at issue regarding Plaintiff's P.I. motion.  Plaintiff's Amended Complaint was served roughly three months ago, and the P.I. motion has been pending for the same duration.  (D.I. 6, 7)  Indeed, each of Defendants filed an Answer more than six weeks ago, such that, absent the pending preliminary injunction motion, the Court would already have scheduled a Rule 16 teleconference and the parties would otherwise have commenced the discovery process.  *See, e.g., Entm't Tech. Corp.*, 2003 WL 22519440 at *5 (noting that "[w]eighing in favor of Plaintiff's motion is the fact that the discovery request has not been made too far in advance of the start of formal discovery").  Granting limited expedited discovery at this stage would therefore not force

---

[9]    Further supporting this Court's decision is the fact that both parties agree that the "good cause"/reasonableness standard should govern Plaintiff's motion for expedited discovery. (D.I. 43 at 8; D.I. 44 at 1–2)

Defendants to provide access to their documents or witnesses before they have had a fair opportunity to assess the issues in dispute, or to catalogue the relative strengths and weaknesses of their case. Any prejudice that might result from "early" discovery is muted in a case, like this one, where the very "early" stage of this litigation has passed.

Moreover, the case is likely to be streamlined and proceed more efficiently if targeted, expedited discovery proceeds at this juncture.[10] Regardless of the outcome of Plaintiff's preliminary injunction motion, Plaintiff will presumably soon be seeking documentary and testimonial evidence relating to the accused products, just as it has done with its expedited requests. Discovery at this phase is therefore likely not only to crystallize the issues for the preliminary injunction hearing, but also will not be wasteful, because much of the information at issue would likely have been turned over anyway by Defendants soon after a Rule 16 conference.

In addition, courts have regularly noted that expedited discovery is more likely to be an efficient use of the parties' resources when it relates to a pending preliminary injunction hearing, where it can help to ensure a clear and focused factual record. *EXL Labs., LLC v. Egolf*, Civil Action No. 10-6282, 2010 WL 5000835, at *8 (E.D. Pa. Dec. 7, 2010) (granting expedited discovery where a preliminary injunction hearing was pending); *Philadelphia Newspapers, Inc.*, 1998 WL 404820 at *4 (noting that "'expedited discovery is particularly appropriate'" where that discovery would "'better enable the court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing") (citations omitted). While no

---

[10]    Indeed, Plaintiff's counsel previously indicated that "if, after discovery on the I.MOD, the discovery reveals that the [*sic*] TK's representations accurately reflect the I.MOD product, not pursuing the preliminary injunction would be given serious consideration." (D.I. 49, ex. 3)

preliminary injunction hearing had been scheduled when Plaintiff's motion was filed, the Court intends to proceed with such a hearing promptly, as noted below.

Regarding the need for expedited discovery, the Court finds that Plaintiff has shown a need for discovery relating to certain, circumscribed subject-matter that may illuminate issues at play at the preliminary injunction hearing. The parties dispute the manner in which the I.MOD is installed,[11] which in turn is important to resolving whether Plaintiff has met its burden of showing a reasonable "likelihood of success" on the merits of its infringement case. *Amazon.com, Inc.*, 239 F.3d at 1350. While this expedited discovery may involve the disclosure of Defendants' confidential business and/or trade secret information, any concerns regarding confidentiality can be adequately addressed with a Protective Order.

However, after examining the breadth of Plaintiff's discovery requests, it is clear that those requests are not narrowly tailored. Plaintiff previously represented that "[t]he points of contention concerning infringement by the I.MOD system have been well fleshed-out by the parties, and the discovery *will be directed to the incline modules . . . [and] information concerning just one of [the] five [installation] steps"* found in the '002 patent." (D.I. 43 at 10 (emphasis added)) However, when Plaintiff actually submitted those proposed requests, they were not so limited. Instead, they included some interrogatories and requests for production of documents that appear to more directly relate to general allegations regarding willful infringement, factors regarding irreparable harm, design and manufacturing activities outside the

---

[11]     The Court does not share Plaintiff's view that Defendants' statements regarding how their products are installed have "shift[ed]." (D.I. 43 at 2) However, what is clear is that the parties dispute the actual contours of the accused product and the methods of installing that product. Expedited discovery will likely aid the Court in addressing that issue in the context of Plaintiff's P.I.. motion.

14

U.S., products not currently accused of infringement,[12] and issues not addressed in the parties'
preliminary injunction papers. (D.I. 48, exs. 1–3; D.I. 50)  While Plaintiff may ultimately be
entitled to much of the discovery it seeks later in this case, an expedited discovery motion is not
the proper vehicle for obtaining such broad-ranging discovery.  Instead, such a motion should be
focused on only those "narrow categories of documents [and information that] will substantially
contribute to moving this case forward." *Semitool, Inc.*, 208 F.R.D. at 277.  In this case, such
categories must focus on addressing the key disputed factual issue relevant to the P.I. motion
hearing—namely, how the incline modules in Defendant's I.MOD system are installed.

　　　When a movant overreaches with its requests for expedited discovery, courts have
sometimes denied the requests in their entirety.  *See, e.g., Zheng*, 2006 WL 1373055 at *5
(denying a motion for expedited discovery and noting that granting the requests "would lead to
the parties conducting nearly all discovery in an expedited fashion under the premise of preparing
for a preliminary injunction hearing, which is not the purpose of expedited discovery");
*Philadelphia Newspapers, Inc.*, 1998 WL 404820 at *3 (denying a motion for expedited
discovery where the movant failed to include "reasonable boundaries").  However, the Court
finds that, particularly in light of the fact that such discovery may help to clarify and elucidate
issues relating to the installation of incline modules that will be presented to the Court at the
upcoming P.I. motion hearing, limited discovery is appropriate at this stage.

　　　Thus, the Court finds that good cause exists to depart from the ordinary discovery process

---

　　　[12]　　　The Court therefore rejects the definition of "Accused Device" proposed by
Plaintiff (D.I. 48), and will limit expedited discovery to Defendants' I.MOD systems that have
been made, used, sold, or offered for sale in the U.S., or imported into the U.S., in accordance
with 35 U.S.C. § 271.

15

to allow Plaintiff to pursue discovery on that topic only. To that end, the Court has outlined the parameters of the permissible expedited discovery below. *See, e.g.*, *Semitool, Inc.*, 208 F.R.D. at 277–78 (granting-in-part a motion for expedited discovery, and outlining specific topics for such discovery). Given the narrow focus of this discovery and the current procedural posture, the accelerated time line should pose a minimal burden to Defendants.

## IV.    CONCLUSION

For the reasons outlined above, it is hereby ORDERED that Plaintiff's motion for expedited discovery (D.I. 42) is GRANTED-IN-PART. By no later than **October 11, 2011**, Defendants shall provide to Plaintiff the following:

(1)    Installation instructions, product manuals, and any other documents relating to the installation or proposed installation in the United States of the incline modules in Defendants' I.MOD system; and

(2)    Any marketing brochures, PowerPoint presentations, videos, or other documents relating to promotion or offers for sale of Defendants' I.MOD system that have been given, distributed, or otherwise publicly disseminated in the United States.

By no later than **October 18, 2011**, Defendants shall make a witness available for a 30(b)(6) deposition regarding (1) any documents produced by Defendants pursuant to this Order; and (2) any factual allegations set forth in the declarations of Richard A. Glanzman (D.I. 26, A165–174; D.I. 39, ex. 2) relating to the installation or proposed installation in the United States of the incline modules in Defendants' I.MOD system.

Plaintiff shall file any sur-sur-reply brief in further support of its P.I. motion no later than **October 25, 2011**. Defendants shall file any further written response to that sur-sur-reply by no

later than **November 1, 2011**.  The Court will hold a hearing on Plaintiff's motion for a

preliminary injunction beginning at **10:00 a.m.** on **November 4, 2011**.  To the extent that a party

plans to put forward witness testimony at that hearing, the party shall inform the Court by letter

submitted no later than **November 1, 2011**, listing the name(s) and title(s) of the proposed

witness(es).

The parties shall submit a proposed form of a Protective Order by no later than

**September 28, 2011.**  The parties shall also meet and confer promptly regarding a scheduling

order pursuant to Fed. R. Civ. P. 26(f), and submit a proposed scheduling order, which also

reflects the above dates, by no later than **October 7, 2011**.


_Christopher J. Burke_
The Honorable Christopher J.  Burke
UNITED STATES MAGISTRATE JUDGE


Dated: September 26, 2011